# EXHIBIT A

108 F.4th 241
United States Court of Appeals, Fourth Circuit.

Stanley FRIEDLER, M.D.; Gail Friedler; Richard Friedler; Milan Wister, M.D.; Amy Wister; Philip Kontis, M.D.; Cindy Kontis; Gordon Boone Petitioners – Appellants,
v.
STIFEL, NICOLAUS, & COMPANY, INC.; Coleman Joseph Devlin, Respondents – Appellees.

No. 22-1895
|
Argued: May 8, 2024
|
Decided: July 18, 2024

**Synopsis**
**Background:** Brokerage account holders filed petition to vacate arbitration award entered against them, and in favor of brokerage firm and its employee, on account holders' claims for, among other things, negligence, breach of contract, breach of fiduciary duty, negligent supervision, and violations of state and federal securities laws, including Securities and Exchange Commission (SEC) Act. The United States District Court for the District of Maryland, Stephanie A. Gallagher, J., 2022 WL 3027860, denied motion, and account holders appealed.

The Court of Appeals, Diaz, Chief Judge, held that claim that arbitration panel manifestly disregarded SEC Act did not present federal question conferring jurisdiction over petition to vacate arbitration award.

Vacated and remanded with instructions.

Wilkinson, Circuit Judge, filed concurring opinion.

**Procedural Posture(s):** On Appeal; Application to Vacate Arbitration Award.

*243 Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge. (1:22–cv–00752–SAG)

**Attorneys and Law Firms**

ARGUED: Marc Seldin Rosen, LAW OFFICES OF MARC SELDIN ROSEN, LLC, Sparks, Maryland, for Appellants. Edwin A. Zipf, BRESSLER, AMERY & ROSS, Florham Park, New Jersey, for Appellees. ON BRIEF: Daniel J. Miller, Kevin D. Stern, MILLER STERN LAWYERS, LLC, Baltimore, Maryland, for Appellants. Daniel J. Donovan, Priscilla A. Donovan, DONOVAN & RAINIE, LLC, Ellicott City, Maryland, for Appellees.

Before DIAZ, Chief Judge, WILKINSON, Circuit Judge, and MOTZ, Senior Circuit Judge.

**Opinion**

Vacated and remanded by published opinion. Chief Judge Diaz wrote the opinion in which Judge Wilkinson and Senior Judge Motz joined. Judge Wilkinson wrote a concurring opinion.

DIAZ, Chief Judge:

Petitioners seek to vacate an arbitration award entered against them arising out of a dispute over the management of their brokerage accounts. They claim that the arbitrators manifestly disregarded the law in resolving the dispute. The district court denied the petition, finding that it didn't meet this difficult standard.

Until recently, we understood federal jurisdiction to lie over petitions to vacate *244 arbitration awards if a federal court would have had jurisdiction over the underlying dispute. *McCormick v. Am. Online Inc.*, 909 F.3d 677, 683 (4th Cir. 2018). But in *Badgerow v. Walters*, the Supreme Court rejected that approach and held that the face of the petition must contain an independent jurisdictional basis beyond the Federal Arbitration Act ("FAA") itself. 596 U.S. 1, 9, 142 S.Ct. 1310, 212 L.Ed.2d 355 (2022). Because no such jurisdictional basis exists here, we vacate the district court's judgment and remand with instructions to dismiss the petition for lack of jurisdiction.

I.

A.

In 2010, Petitioners Stanley Friedler, Gail Friedler, Richard Friedler, Milan Wister, Amy Wister, Philip Konits, Cindy Konits, and Gordon Boone opened brokerage accounts with Stifel, Nicolaus & Company that were to be managed by Stifel employee Coleman Devlin. Petitioners were ultimately unhappy with Devlin's performance and filed a claim for arbitration with the Financial Industry Regulatory Authority ("FINRA") seeking damages for Devlin's alleged mismanagement of their accounts. They asserted various claims against Devlin and Stifel, including negligence, breach of contract, breach of fiduciary duty, negligent supervision, and violations of state and federal securities laws.

Over nearly two years and more than twenty hearing sessions, the arbitration panel heard evidence and argument from the parties. At the end of the proceedings, the panel issued a two-sentence award for Stifel and Devlin. Because the parties didn't jointly request an "explained decision" in accordance with FINRA rules, FINRA Rule 12904(g), the panel didn't provide a detailed written explanation for the award.

B.

Petitioners then moved to vacate the arbitration award in federal court on the ground that the arbitration panel manifestly disregarded the law, including federal securities law. The petition asserted that the district court had federal question jurisdiction under 28 U.S.C. § 1331 based on the FAA and the Securities Exchange Act ("SEC Act"), and supplemental jurisdiction over the state-law claims.

At the time the petition was filed, our precedent held that a federal court had jurisdiction to review a motion to vacate an arbitration award if it would have had jurisdiction over the underlying dispute. *McCormick*, 909 F.3d at 683. This was commonly known as the "look-through" approach, as a federal court would have jurisdiction if it "look[ed] through" the petition to the underlying dispute and decided it had jurisdiction over those claims. *Id.* (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 62, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009)).

C.

Three days after Petitioners moved to vacate the award, the Supreme Court decided *Badgerow*, 596 U.S. 1, 142 S.Ct. 1310, 212 L.Ed.2d 355. There, Badgerow sought to vacate an arbitration award entered against her arising out of her allegedly wrongful termination by her employer. *Id.* at 5, 142 S.Ct. 1310. And she did so on the ground that there was fraud in the arbitral proceeding. *Id.* Her employer removed the case to federal court and, relying on the "look-through" approach, the district court denied Badgerow's motion to remand because the underlying dispute asserted federal employment law claims. *Id.* at 5–6, 142 S.Ct. 1310.

**\*245** Noting the textual differences between provisions of the FAA,[1] the Supreme Court disagreed and held that the "look-through" approach applies only to petitions to compel arbitration under Section 4 of the FAA, but not motions to confirm or vacate arbitration awards under Sections 9 and 10. *Id.* at 5, 11, 142 S.Ct. 1310. Instead, the Court explained that a party seeking to vacate an arbitration award in federal court "must identify a grant of jurisdiction, apart from Section 10 itself, conferring access to a federal forum," such as diversity or federal-question jurisdiction. *Id.* at 8, 142 S.Ct. 1310 (cleaned up). And the Court explained that Badgerow's petition didn't do that because it wasn't disputing "the legality of Badgerow's firing," but rather the "enforceability of an arbitral award." *Id.* at 9, 142 S.Ct. 1310. Because that's "no more than a contractual resolution of the parties' dispute" governed by state law, the Court reasoned that the petition didn't raise a federal question. *Id.*

D.

Without addressing jurisdiction, the district court here denied Petitioners' motion to vacate the award. It held that Petitioners "d[id] not come close" to establishing that the panel manifestly disregarded the law, but rather "vociferously reargue[d] the case they presented during the arbitration, both as to the facts and the law." *Friedler v. Stifel, Nicolaus & Co.*, No. 1:22-cv-752, 2022 WL 3027860, at \*2 (D. Md. Aug. 1, 2022). And it noted that "nothing about the panel's cursory decision suggests any intentional disregard of applicable legal standards." *Id.* The district court explained that the petition itself "illustrate[d] the myriad factual and legal disputes," including the "standards for determining suitability [of an investment], the nature of the fiduciary duties owed, and the proper method of calculating damages." *Id.* at \*3.

Petitioners appeal that order. We ordered supplemental briefing in light of *Badgerow.* Both parties insist that we have jurisdiction to consider the petition on the ground that it

asserts that the panel manifestly disregarded federal securities law. We disagree.

We have an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). So we begin—and end—with that question. And because we conclude that a petition to vacate on the ground that the arbitration panel manifestly disregarded federal law doesn't confer jurisdiction, we vacate the district court's order and remand with instructions to dismiss the petition for lack of jurisdiction.

II.

A.

The FAA is an "anomaly in the field of federal-court jurisdiction" because it "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate," but doesn't "create any independent federal-question jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). As a result, "enforcement **\*246** of the Act is left in large part to the state courts." *Id.*

Fifteen years ago, however, the Supreme Court held that when presented with a petition to compel arbitration under Section 4 of the FAA, a federal court may assess jurisdiction by "look[ing] through" the petition to see whether it would have jurisdiction over the underlying dispute. *Vaden*, 556 U.S. at 62, 129 S.Ct. 1262. We later adopted the same approach for petitions to vacate arbitration awards under Section 10. *McCormick*, 909 F.3d at 683.

But *Badgerow* abrogated our approach to jurisdiction over Section 10 petitions. Rather than "looking through" to the underlying claims, *Badgerow* instructs that we should look to the "face of the application" for an "independent jurisdictional basis." 596 U.S. at 9, 142 S.Ct. 1310. And if the petition alleges that "federal law (beyond Section 9 or 10 itself) entitles the applicant to relief, then § 1331 gives the court federal-question jurisdiction." *Id.*

Seizing on this language, both parties contend that because the "face of the petition" asserts that the arbitration panel manifestly disregarded federal securities laws, the district court had federal-question jurisdiction over the dispute under § 1331.

We can't agree. A petition to vacate an arbitration award doesn't raise the merits of the underlying claim, but rather the "enforceability of an arbitral award," which is "no more than a contractual resolution of the parties' dispute." *Id.* at 9, 142 S.Ct. 1310; see also *SmartSky Networks, LLC v. DAG Wireless, Ltd.*, 93 F.4th 175, 182 (4th Cir. 2024) ("At the time the parties filed their respective Section 9 and 10 applications, they were no longer litigating over their fraught business relationship—those issues and claims had been resolved by the Tribunal. Instead, the parties' dispute focused on the enforceability of the arbitral award.").

The parties suggest that *Badgerow* is distinguishable on the ground that it involved a claim that the award should be vacated because of fraud, rather than a manifest disregard of federal law. But we think the same reasoning applies in this context, as we've long treated manifest disregard claims as distinct from the merits of the underlying issues they raise.

Judicial review of an arbitration award is "severely circumscribed," and is "among the narrowest known at law." *Jones v. Dancel*, 792 F.3d 395, 401 (4th Cir. 2015) (cleaned up). Because arbitration is designed to permit expedited resolution of disputes that avoids the expense of ordinary litigation, giving "full scrutiny" of arbitration awards would "frustrate the purpose of having arbitration at all." *Apex Plumbing Supply, Inc v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998). Still, we've recognized that federal courts may vacate arbitration awards if the arbitrators "manifestly disregard[ ]" the law. *Jones*, 792 F.3d at 401 (cleaned up).

But this isn't a green light for courts to flyspeck the merits of the dispute. Rather, courts focus only on whether the arbitrator "did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 445 (4th Cir. 2020) (cleaned up). That's because parties who agree to arbitrate "assume the risk that the arbitrator may interpret the law in a way with which they disagree." *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 478 n.5 (4th Cir. 2012).

So when a petition claims that the arbitration panel manifestly disregarded federal law, our review analyzes that law in only the most cursory sense. We ask simply whether there is "binding precedent **\*247** requiring a contrary result," *Warfield v. Icon Advisers*, 26 F.4th 666, 670–71 (4th

Cir. 2022) (cleaned up), that the arbitrator was aware of, understood correctly, found applicable to the case, and yet chose to ignore, *Constellium Rolled Prods. Ravenswood, LLC v. United Steel Workers Int'l Union*, 18 F.4th 736, 741 (4th Cir. 2021) (cleaned up).

At least one circuit has understood federal-question jurisdiction to lie "where the petitioner complains principally and in good faith that the award was rendered in manifest disregard of federal law." *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 375 (2d Cir. 2016) (quoting *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 27 (2d Cir. 2000)), *abrogated on other grounds by Badgerow*, 596 U.S. 1, 142 S.Ct. 1310, 212 L.Ed.2d 355. The Second Circuit reasoned that such a petition "so immerses the federal court in questions of federal law and their proper application that federal question subject matter jurisdiction is present." *Greenberg*, 220 F.3d at 27.

But this analysis predated *Badgerow*, as well as the Supreme Court's decisions in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005), and *Gunn v. Minton*, 568 U.S. 251, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013), addressing when a complaint that doesn't arise under federal law nevertheless raises a "substantial" federal question. With the benefit of these cases, and unburdened by prior circuit precedent, we think the better view is that a claim of manifest disregard of federal law doesn't present a federal question.

Under *Grable* and *Gunn*, whether a federal issue is "substantial" depends on the "importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260, 133 S.Ct. 1059. This is a "high bar" that "generally will involve a pure issue of law, rather than being fact-bound and situation-specific." *Burrell v. Bayer Corp.*, 918 F.3d 372, 385 (4th Cir. 2019) (cleaned up). That's true even where, as here, the federal issue would otherwise be within the exclusive jurisdiction of federal courts. *Cf. Gunn*, 568 U.S. at 264, 133 S.Ct. 1059 (finding that resolution of a patent law issue in the context of a legal malpractice suit wasn't "substantial" even though federal courts have exclusive jurisdiction over patent law).

Given the fact-intensive nature of the parties' dispute—involving over twenty hearings—and the superficial review of federal law required in the manifest disregard analysis, we are confident that any federal issue posed by the petition isn't "substantial" under *Grable.* And where the federal issue isn't substantial, "[s]tate courts are fully capable" of resolving it, *Burrell*, 918 F.3d at 386, and "can be expected to hew closely to the pertinent federal precedents," *Gunn*, 568 U.S. at 262, 133 S.Ct. 1059.

That's not to say that § 1331 is a dead letter as a basis for jurisdiction over petitions to vacate arbitration awards. *Badgerow* suggests that there may be federal statutes beyond the FAA itself that would "entitle[ ] the applicant to relief" and thus support jurisdiction. 596 U.S. at 9, 142 S.Ct. 1310. The Sixth Circuit, for example, has held that the Labor Management Relations Act (LMRA) is such a statute. *Greenhouse Holdings, LLC v. Int'l Union of Painters and Allied Trades Dist. Council 91*, 43 F.4th 628, 631 (6th Cir. 2022). But it reached that conclusion because the LMRA confers jurisdiction over "suits for violation[s] of contracts between an employer and a labor organization," *id.* (citing 29 U.S.C. § 185(a)), and it was "well-established that the LMRA authorizes courts to **\*248** enforce or vacate labor arbitration awards," *id.* (cleaned up).

We're aware of no such grant of jurisdiction in the SEC Act, and the parties don't argue otherwise. Although the Act grants federal courts exclusive jurisdiction over "violations" of the Act and "all suits in equity and actions at law brought to enforce any liability or duty created by" the Act, 15 U.S.C. § 78aa(a), it doesn't authorize vacatur of an award that the parties agreed to have settled by an arbitrator.

Thus, even assuming the petition adequately alleged that Devlin and Stifel violated the Act,[2] the Act itself wouldn't "entitle[ ] the applicant to relief," *Badgerow*, 596 U.S. at 9, 142 S.Ct. 1310—here, vacatur of the arbitration award. As both parties agree, vacatur is warranted only if Petitioners prove that the panel *manifestly disregarded* the Act.

B.

But we don't agree that a claim of manifest disregard is a creature of federal common law that itself gives rise to federal-question jurisdiction. *Cf.* Respondents' Supp. Br. at 4–5 (arguing that manifest disregard is "a federal law doctrine which federal courts have developed as an additional basis for vacating an arbitration award"). Rather, manifest disregard is best understood as a "judicial gloss" on the FAA's statutory grounds for vacatur.

Manifest disregard is "an old yet enigmatic ground for overturning arbitral awards," *Wachovia Sec. LLC v. Brand*, 671 F.3d 472, 480 (4th Cir. 2012), that arose out of the

Supreme Court's statement, in dicta, that "the interpretations of the law by arbitrators *in contrast to manifest disregard* are not subject, in the federal courts, to judicial review for error in interpretation," *id.* at 480–81 (emphasis added) (quoting *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953), *overruled on other grounds by Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)).³

It's true that we've described manifest disregard in dicta as a common law ground for vacatur, *Patten v. Signator Ins. Agency*, 441 F.3d 230, 234 (4th Cir. 2006), "separate and distinct from [the FAA]'s statutory grounds," *Wachovia*, 671 F.3d at 480.⁴ **\*249** But the Supreme Court cast doubt on that view in *Hall Street Associates, LLC v. Mattel, Inc.*, holding that grounds for vacatur in the FAA are exclusive and can't be expanded by contract. 552 U.S. 576, 584, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008).

The Court there rejected petitioner's argument that parties could expand the FAA grounds for vacatur by contract just as the Court expanded the FAA grounds by adding manifest disregard in *Wilko*. *Id.* at 584–85, 128 S.Ct. 1396. Addressing the "vagueness" of its statement in *Wilko*, the Court noted that "[m]aybe the term 'manifest disregard' was meant to name a new ground for review, but maybe it merely referred to the [FAA] grounds collectively, rather than adding to them," or it "may have been shorthand" for the FAA grounds authorizing vacatur where the arbitrators were "guilty of misconduct" or "exceeded their powers." *Id.* at 585, 128 S.Ct. 1396.

*Hall Street* has been "widely viewed as injecting uncertainty into the status of manifest disregard as a basis for vacatur." *Wachovia*, 671 F.3d at 481. But the Court later declined to decide whether claims of "manifest disregard" survive *Hall Street* "as an independent ground for review or as a judicial gloss on the enumerated grounds" set out in the FAA. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010).

In the wake of *Hall Street* and *Stolt-Nielsen*, circuit courts are split on the continuing validity of claims of manifest disregard as a basis for vacatur. *Wachovia*, 671 F.3d at 481 n.7 (collecting cases). While some have cast aside such claims altogether, we've understood *Stolt-Nielsen* "to mean that manifest disregard continues to exist either as an independent ground for review or as a judicial gloss on the enumerated grounds" in the FAA. *Id.* at 483 (cleaned up). But we've never decided which of those formulations is right. *Id.* (declining to resolve this question).

All signs though point to viewing manifest disregard as a judicial gloss on the FAA.

Consider *Hall Street* itself. There, the Court refused to read *Wilko* as necessarily creating a "new ground for review," noting the equally plausible alternative that *Wilko* was merely referring to the FAA's statutory grounds for vacatur. 552 U.S. at 585, 128 S.Ct. 1396.

The well-recognized principle that there is "no federal general common law," *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), further informs our view. "Judicial lawmaking in the form of federal common law plays a necessarily modest role under a Constitution that vests the federal government's 'legislative Powers' in Congress and reserves most other regulatory authority to the States." *Rodriguez v. Fed. Deposit Ins.*, 589 U.S. 132, 136, 140 S.Ct. 713, 206 L.Ed.2d 62 (2020). Thus, in recent years, the Court has departed from "the heady days in which [it] assumed common-law powers to create causes of action." *Egbert v. Boule*, 596 U.S. 482, 491, 142 S.Ct. 1793, 213 L.Ed.2d 54 (2022) (cleaned up).

Given all this, we doubt that the single sentence in *Wilko* is best understood as creating a federal common law doctrine distinct from the FAA's comparable statutory grounds. And we're in good company, as no circuit since *Hall Street* has held that manifest disregard claims are independent of the FAA. Instead, most of the circuits that continue to recognize such claims do so only as a "judicial gloss" on the FAA's statutory grounds. *See Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021) ("We have held that as a judicial gloss on the specific grounds **\*250** for vacatur of arbitration awards in the FAA, an arbitrator's manifest disregard of the law ... remains a valid ground for vacating arbitration awards." (cleaned up)); *Comedy Club, Inc v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) (noting that manifest disregard is a "shorthand for a statutory ground under the FAA"); *In re Romanzi*, 31 F.4th 367, 375 (6th Cir. 2022) (explaining that the manifest disregard test is "part and parcel of [the FAA]'s statutory prohibition against the arbitrators exceeding their powers, because arbitrators do not exceed their authority unless they display a manifest disregard of the law" (cleaned up)); *see also Ortiz-Espinosa v. BBVA Sec. of Puerto Rico, Inc.*, 852 F.3d 36, 46 (1st Cir. 2017), *abrogated on other grounds by Badgerow v. Walters*, 596 U.S.

1, 142 S.Ct. 1310, 212 L.Ed.2d 355 (2022) (explaining that if manifest disregard survives, it "does so only as a judicial gloss" on the FAA and thus "cannot provide federal question jurisdiction"); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268 (7th Cir. 2006) (noting pre-*Hall Street* that it defines manifest disregard "so narrowly that it fits comfortably" within the FAA's statutory ground "where the arbitrators exceeded their powers" (cleaned up)).

Finally, we think *Badgerow* bolsters our view that manifest disregard is not a jurisdictional gateway for vacatur. To hold otherwise would open the door that *Badgerow* closed.

It's no surprise that parties on the losing end of an arbitration award will think that the arbitrators misapplied the law in some way. If they could merely claim that the panel manifestly disregarded the law as their ticket into federal court, federal jurisdiction over petitions to vacate would be even broader than under the "look-through" approach that *Badgerow* rejected.

We decline to punch that ticket.

* * *

For these reasons, we vacate the district court's judgment and remand with instructions to dismiss the petition for lack of jurisdiction.

*VACATED AND REMANDED*

WILKINSON, Circuit Judge, concurring:

I agree with the majority that "manifest disregard of federal law" is a flawed yardstick for determining whether federal courts have jurisdiction to review the merits of arbitral awards in the wake of *Badgerow.* One, the standard is too broad. Parties to an arbitration could assert that the arbitrator "manifestly disregarded" some federal statute in every case. If that were enough to confer jurisdiction, the "manifest disregard" standard would completely swallow *Badgerow*'s rule. Two, the standard is too vague. Vague jurisdictional standards "produce appeals and reversals, encourage gamesmanship," and frequently "complicate a case, eating up time and money as the parties litigate" over which court should decide their claims. *Hertz Corp. v. Friend*, 559 U.S. 77, 94, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010). The "manifest disregard" standard is by its nature a litigious one whose resolution lies often in the eye of the beholder.

If federal courts must have a "jurisdictional basis" independent of the FAA to review the merits of an arbitral outcome, what qualifies? Must Congress enact an express cause of action that allows parties to challenge arbitral awards in federal court? The Second Circuit, for example, has held that "for jurisdiction to be proper, the petition to confirm must state a cause of action" created by "another federal statute." **\*251** *Trustees of N.Y. State Nurses Ass'n Pension Plan v. White Oak Global Advisors LLC*, 102 F.4th 572, 600 (2d Cir. 2024).

That might be right. It certainly guards against the dangers of implied private rights of action which the Supreme Court has repeatedly disfavored. The need for an express private cause of action also provides greater jurisdictional certainty than the aforementioned "manifest disregard" standard.

But what, if any, are the costs? The FAA was enacted in 1925 to provide a more expeditious and less costly alternative to litigation, the burdensomeness of which even then was becoming a problem. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (holding that the FAA is "a congressional declaration of a liberal federal policy favoring arbitration"). The view that the FAA, including Sections 9 and 10, provides a basis for federal jurisdiction is at least certain in its application. The Act also expresses an important federal principle of commerce, namely that arbitration agreements are "valid, irrevocable, and enforceable" and should be enforced "according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). State laws that "stand[ ] as an obstacle to the accomplishment and execution of the full purposes" of the FAA are invalid. *Id.* at 352, 131 S.Ct. 1740.

The federal judiciary has a well-established standard that arbitral outcomes were due significant judicial deference under the FAA. As the majority notes, courts assess whether the arbitrator "did his job—not whether he did it well, correctly, or reasonably." *See* Maj. Op. at —— (quoting *Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 445 (4th Cir. 2020)). This standard reflects the fact that parties to an arbitration "assume the risk that the arbitrator may interpret the law in a way with which they disagree." *See* Maj. Op. at —— (quoting *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 478 n.5 (4th Cir. 2012)).

That deference was seen as a prime means of implementing the FAA's overriding purpose of providing a more streamlined

alternative to litigation. After *Badgerow*, I suspect that many more challenges to arbitral awards will land in state courts. That's because Congress often in federal statutes did not provide an express private cause of action in federal court for litigants displeased with arbitral outcomes. It assumed that the FAA would do all by itself the jurisdictional job.

State courts are surely capable of handling challenges to arbitration, many of which involve, as here, a mixture of state and federal claims. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) ("[T]he Act makes contracts to arbitrate 'valid, irrevocable, and enforceable,' ... whether enforcement be sought in state court or federal."). Many of the claims surrounding arbitration are contractual in nature, a staple of state law. Other disputes are not between commercial titans but between an individual and his employer, as in *Badgerow*, or a company handling his brokerage account, as here.

The advantages of a neutral and professional arbitration process, however, do not suddenly wilt depending on the subject matter. I wonder whether the deference to arbitral outcomes will hold in state courts which naturally reflect a far wider spectrum of views as to the respective values of arbitration versus litigation. Ordinarily this variety would be praised as a treasured feature of our federal system, but not if it undercuts a more uniform system of commercial dispute resolution.

**\*252** I do not know why *Badgerow* did not directly say what qualifies as an "independent jurisdictional basis" under § 1331. Greater guidance is always welcome. I nonetheless concur in the majority opinion because it represents a faithful interpretation of the *Badgerow* decision, and following the Supreme Court to the best of our abilities is our foremost job. The Supreme Court expressed the view that § 1331 jurisdiction might continue to play a role in arbitration enforcement proceedings. *Badgerow v. Walters*, 596 U.S. 1, 9, 142 S.Ct. 1310, 212 L.Ed.2d 355 (2022). I have my doubts, but I hope that it is so.

The great concern remains that the litigious nature of the legal profession will come incrementally to shrink the difference between arbitration and full-blown litigation. Whether the corrective lies with further Supreme Court guidance or with Congress adopting an amendment adding some semblance of "look through" language to Sections 9 and 10 of the FAA itself is well beyond the capacity of the lower federal courts to say. *See Vaden v. Discover Bank*, 556 U.S. 49, 53, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009) (looking through to the underlying dispute in Section 4 cases). Doing nothing, however, would be a heavy blow to the purposes of the FAA which has only become more, not less, relevant with the passage of time.

**All Citations**

108 F.4th 241

---

**Footnotes**

1   Section 4 of the FAA provides that a party may "petition any United States district court which, *save for such agreement*, would have jurisdiction" to compel arbitration. 9 U.S.C. § 4 (emphasis added). By contrast, Sections 9 and 10 omit that "save for such agreement" language. *Id.* §§ 9–10.

2   Although both parties assert as much in their supplemental briefing, the petition doesn't mention the SEC Act beyond the jurisdictional statement. In fact, Respondents argued in their merits brief that Petitioners waived any claim under the Act, and they fail to explain their sudden about-face. But because we conclude that even a well-pleaded claim based on the SEC Act wouldn't confer jurisdiction, we decline to resolve the case on this basis, as it would invite more proceedings. *Cf. Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) ("This liberal rule [for amending pleadings] gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities.")

| | |
|---|---|
| 3 | *Wilko* held that an agreement to arbitrate claims under the Securities Act of 1933 was unenforceable—a holding later overruled in *Rodriguez.* It discussed vacatur of an arbitration award only as part of its explanation of the rights given up by agreeing to arbitrate. *Wilko*, 346 U.S. at 435–37, 74 S.Ct. 182. |
| 4 | The statutory grounds include "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). |

**End of Document**　　　© 2024 Thomson Reuters. No claim to original U.S. Government Works.